UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 08-61593-CIV-COOKE/BANDSTRA

JOHN C. DIXON,

    *Plaintiff*,

v.

ODWALLA, INC.,

    *Defendant*.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before me on Plaintiff's Motion for Summary Judgment [D.E. 17], Defendant's Response in Opposition [D.E. 53], Plaintiff's Reply thereto [D.E. 55], Defendant's cross Motion for Summary Judgment [D.E. 46], Plaintiff's Response in Opposition [D.E. 48] and Defendant's Reply thereto [D.E. 49]. I am denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

### *I. BACKGROUND*

Defendant, Odwalla, Inc. ("Odwalla"), produces and distributes fruit juice drinks under its parent company, the Coca-Cola Company ("Coca-Cola"). Odwalla hired Plaintiff, John Dixon ("Dixon"), as a Route Sales Representative ("RSR") in September 2005 to work in the Miami Node. The Miami Node is a distribution center from which RSRs deliver products, seek new clients and attempt to increase sales to existing clients.

Dixon filed his first Equal Employment Opportunity Commission ("EEOC") claim on July 13, 2006. In his claim, Dixon asserted that he was discriminated against because of a

disability and subjected to disparate treatment, unwanted sexual attention, racial harassment and retaliation. The Broward County Office of Equal Opportunity Civil Rights Division concluded there was no reasonable cause to believe Odwalla violated Title VII.  Dixon never filed a lawsuit on this charge and he continued working for Odwalla.

Dixon filed his second EEOC complaint on March 27, 2007.  Dixon received a negative performance evaluation that rated his sales skills as "improvement needed."  Dixon's new claim asserted that his District Sales Manager, Gary Hall ("Hall"), gave him an unjustified negative evaluation on March 22, 2007.  Dixon also claimed that the negative evaluation was retaliation for his first EEOC claim and for opposing the new routes Odwalla presented to him in March 2007.

Odwalla's Vice President for Human Resources, Susan Kirmayer ("Kirmayer"), investigated the allegations in Dixon's EEOC claim.  Kirmayer reviewed Odwalla's records, which showed that Dixon had the lowest sales growth in the Miami and Tampa Nodes and that he was the only RSR with negative sales growth.  Given these low numbers, Kirmayer suspected that Dixon was intentionally prolonging his route to obtain overtime without actually making more sales or deliveries.

Kirmayer hired the Eagle Security Group ("Eagle") to monitor all the RSRs in the Miami Node based on these initial findings.  The Eagle investigator, Joseph Donisi, observed Dixon arriving to work well after he had clocked in on two occasions.[1]  Donisi also observed Dixon visiting a Barnes & Nobel bookstore for over an hour while he was still on the clock, although

---

[1] RSRs clock in and out on hand held computers they take home each day.  Therefore, it is possible for RSRs to clock in before they actually arrive at the Miami Node.  This is explicitly against Odwalla policy.

the bookstore was not part of Dixon's delivery route that day.  Dixon was suspended as a result of the Eagle investigation and Kirmayer referred the matter to Coca-Cola's audit department.

Jennifer Teerdhala, a Code of Business Conduct Supervisor for Coca-Cola, was assigned to investigate Dixon's time discrepancies.  Before beginning her investigation, Teerdhala was aware that Dixon had a pending EEOC claim.  Teerdhala reviewed two weeks of Dixon's time records and found two major discrepancies. On February 12, 2007, Dixon's last delivery invoice occurred sixteen miles from the Miami Node at 10:46 AM but Dixon did not clock out until 2:08 PM.  On February 20, 2007, Dixon clocked in at 4:30 AM but did not reach his customer, who was only thirty miles away, until 7:35 AM.  While Dixon was suspended, another Odwalla RSR, Andrew Maslin ("Maslin"), covered Dixon's route on several occasions.  Although Maslin was unfamiliar with Dixon's route, he was able to complete it in substantially less time than Dixon.

Teerdhala issued a report to Coca-Cola's Ethics & Compliance Committee (the "Committee") after her investigation.  Teerdhala's report concluded that Dixon falsified his time records in violation of the company's Code of Business Conduct and recommended Dixon's termination.  The Committee made the final decision to terminate Dixon on June 7, 2007 based solely upon Teerdhala's report and investigation.

Dixon filed his third EEOC claim on May 7, 2007 after he became aware of the audit investigation. Dixon's third claim asserted that Teerdhala's audit was a pre-textual, retaliatory response to his March 27 EEOC claim. Dixon received a Notice of Right to Sue from the EEOC on July 11, 2008 and filed this retaliation and discrimination claim on October 6, 2008.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be

3

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007) (citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.*

### III. RETALIATION BURDEN-SHIFTING MODEL

Title VII's anti-retaliation provision "prohibits discrimination against an employee for engaging in activity deemed protected under the statute." *Crobitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1156 (11th Cir. 2009). Courts use the burden-shifting model established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to analyze retaliation claims based on circumstantial evidence. Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case, showing that: "(1) he engaged in activity protected under Title VII; (2) he suffered adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Corbitt*, 589 F.3d at 1156. If the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer who must proffer a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the employer meets that burden, the plaintiff must then show that the explanation is merely a pretext for retaliation. *Id.*

### IV. ANALYSIS

**A. *Prima Facie* Case**

The parties do not dispute the existence of the first and second elements of Dixon's *prima*

*facie* case. However, Odwalla argues that Dixon's case lacks a causal connection between the protected activity (Dixon's EEOC claim) and the adverse employment action (Dixon's termination). I disagree. To establish the causation element, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Odwalla argues that there is no causal connection because the Committee was not aware of Dixon's EEOC claim prior to its termination decision. However, the "cat's paw" theory provides that causation may be established if the plaintiff shows that the decision maker followed the biased recommendation of a subordinate without independently investigating the complaint against the employee. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). In other words, if the "recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give affect to the recommender's discriminatory animus," the plaintiff may establish the causation element. *Id.*

Viewing the evidence in the light most favorable to Dixon, I find that a reasonable jury could conclude that he has established the requisite causal connection between his EEOC claim and his termination under the "cat's paw" theory. In the instant case, Kirmayer and Teerdhala were both aware of Dixon's EEOC claims when they conducted their investigations. The Committee also relied solely on Teerdhala's report when it decided to terminate Dixon. And the Committee did not conduct an independent investigation of the facts supporting Dixon's termination. In essence, the Committee "rubber stamped" Teerdhala's report and recommendation when it decided to fire Dixon. Assuming that Kirmayer and Teerdhala possessed retaliatory motives, those motives would have been imputed to the ultimate decision

5

maker, the Committee. Therefore, the Committee's decision would not be "free of the taint of [its] biased subordinate employee[s]." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001). Accordingly, I find that Dixon has established a *prima facie* case of retaliation.

**B. Legitimate, Non-Retaliatory Reasons for Termination**

Dixon's establishment of a *prima facie* case shifts the burden to Odwalla "to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Hairston v. Gainesville Sun Pub Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Odwalla's burden of rebuttal has been characterized as "exceedingly light" because it merely requires the employer to produce non-retaliatory reasons, not prove them. *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). I find that Odwalla has clearly met that burden. Odwalla asserts that the Committee decided to terminate Dixon because he violated the company's Code of Business Conduct for Financial Records. These observations were supported by time discrepancies found in Dixon's records. Therefore, it is clear that Odwallla has produced legitimate, non-retaliatory reasons for terminating Dixon's employment.

**C. Pretext**

Because Odwalla has produced legitimate, non-retaliatory reasons for terminating Dixon's employment, I must consider whether those reasons were instead a pretext for retaliation. "A plaintiff raises a genuine issue of material fact concerning pretext if the plaintiff casts sufficient doubt on the defendant's proffered non-retaliatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct but were a pretext for retaliation." *Corbitt*, 589 F.3d at 1162. When considering a motion for summary judgment, "the district court must evaluate whether the plaintiff has

demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).  Applying this standard, I find that Dixon has failed to cast sufficient doubt on Odwalla's legitimate reasons to overcome summary adjudication.

The Committee fired Dixon because they believed he falsified his time records in violation of company policy.  Dixon has not introduced evidence that could reasonably indicate that he did not falsify his records.  Teerdhala's recommendation to the Committee relied heavily on the results of Eagle's independent investigation of Dixon.  Dixon has not offered any evidence that questions the legitimacy of Eagle's surveillance.  Nor does Dixon offer any reasonable explanation for the discrepancies in his time records.  Dixon merely asserts, through an affidavit, that he never purposely clocked in prior to his shift while employed with Odwalla. Dixon's explanation for the discrepancies is that his hand held computer had internal clock issues that may have affected his time records.  This explanation does not demonstrate the requisite weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Odwalla's proffered legitimate reasons.  As a result, no reasonable jury could conclude that Odwalla's reasons for terminating Dixon were a pretext for retaliation by the company.

### *V. CONCLUSION*

Accordingly, Plaintiff's Motion for Summary Judgment [D.E. 17] is **DENIED** and Defendant's Motion for Summary Judgment [D.E. 46] is **GRANTED**.

**DONE AND ORDERED** in Chambers, Miami, Florida this 25th day of February 2010.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

cc:

The Honorable Ted E. Bandstra

All counsel of record